**Frank P. Arleo - #0801**
**ARLEO & DONOHUE, L.L.C**.
622 Eagle Rock Avenue
West Orange, New Jersey 07052
(973) 736-8660 Fax (973) 736-1712
Frank.arleo@arleodonohue.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| R. DANIEL GENTLES,<br><br>         **Plaintiff,**<br><br>     vs.<br><br>BLUE HORIZON INNOVATIONS LLC,<br>a Florida Limited Liability Company, and<br>DAVID L. FRANK, an individual,<br><br>        **Defendants.** | Civil No.:<br><br>**PLAINTIFF'S VERIFIED COMPLAINT** |

        Plaintiff. R. DANIEL GENTLES, by and through his attorneys Arleo & Donohue, LLC, by way of Verified Complaint against defendants, states as follows:

**JURISDICTION AND VENUE**

        1.        This Court has jurisdiction and venue over this action and these Defendants, pursuant to 15 USCS § 78aa, 15 USCS § 78r, 15 USCS § 78bbb, 28 U.S.C. § 1332 and 28 U.S.C. § 139l(b).

        2.        Alternately, this Court has jurisdiction under 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy is greater than $75,000.

        3.        Venue is proper in this district under 28 U.S.C. § 139l(b) insofar as the substantial events underlying plaintiff's claims occurred in this District.

1

## THE PARTIES

4**.**      Plaintiff, R. Daniel Gentles, ("Gentles") is an individual, over the age of majority, who resides in Essex County, New Jersey and is a Partner, Membership Shareholder and Advisory Board Member in Defendant BHI.

5.      Defendant BHI ("BHI") is a  Florida Limited Liability Company that maintains its principal place of business and carries out its core executive and administrative functions in Broward County, Florida.

6.      Defendant David L. Frank ("Frank") is the CEO, founding and Managing Member of BHI and is an individual, over the age of majority, who resides in Broward County, Florida.

## FACTS OF CASE

7.      On September 29, 2014, Plaintiff and Defendants entered into an agreement whereby Plaintiff would go to his extensive network of investors, in order to raise investment capital for the Defendants.  See Exhibit A.

8.      This 2014 Agreement by and between the Plaintiff and Defendants has never been formally terminated and Plaintiff continued to work closely with the Defendants, through to April of 2021, as BHI's Vice President of Sales Channel Development.  See Exhibit B.

9.      The parties agreed on several points of compensation for Plaintiff, in accordance with the Plaintiff raising investment funds for the Defendants, which the Defendants admitted to the Plaintiff that they were not able to raise for themselves.

10.      Firstly, and as an initial incentive to the Plaintiff, on the date of October 15, 2014, the Defendants issued a membership stock certificate to Plaintiff's company for Ten Thousand (10,000) Membership shares in Defendant BHI.  See Exhibit C.

11.      Additionally, and as a further, initial incentive to the Plaintiff, on the date of June 1, 2015, the Defendants issued a membership stock certificate to Plaintiff for One Hundred Thousand (100,000) Membership shares in Defendant BHI and Defendant Frank stated that Plaintiff would be a Partner in

2

Defendant BHI upon his fundraising success.  See Exhibits D & E.

12.     Another form of compensation for investment funds raising for and on behalf of the Defendants was Ten (10%) Per Cent Commission, to be paid by Defendants to Plaintiff as 10% of all investment monies raised by Plaintiff for and on behalf of Defendants thereto.  See Exhibit F.

13.     Most of those commissions owed have not been paid by Defendants to Plaintiff and are due and owing as of the date of this Verified Complaint.

14.     The relatively small dollar amount of commissions which have been paid to date were paid through the years of 2015 through to the year 2020.

15.     To date, and as commission-based compensation for his work on behalf of Defendants, Plaintiff brought in between Two Million ($2,000,000) to Five Million ($5,000,000) Dollars in investment sums to BHI and, therefore has earned between Two Hundred Thousand ($200,000) to Five Hundred Thousand ($500,000) Dollars in commissions.

16.     Despite repeated requests for payment, the Defendants have refused to pay out to the Plaintiff the full dollar amount of commissions owed.

17.     Further, and despite repeated requests thereto, the Defendants have refused to provide any accounting of the total dollar amount of investment funds brought into Defendant BHI through the efforts of Plaintiff.

18.     Additionally, the parties in this action had further agreement for the Plaintiff to bring in large investors and/or company purchasers to the Defendants.

19.     On or about the date of August 8, 2015, the Plaintiff brought in an investment group known as G.O.D. Trucking, Inc. (GTI), a large, nationwide trucking company with an intense interest in the technologies of BHI, which GTI believed could revolutionize the trucking industry and cut their company's operating costs by 1/3rd or better.

20.     GTI made a formal offer to the Defendants to completely fund all R&D expenses of BHI,

on a monthly basis and with no expenses cap, which at the time were estimated to be approximately One Hundred Thousand ($100,000) Dollars per month.  See Exhibit G.

21.     Further, GTI offered to pay Defendant Frank a salary amounting to Two Hundred Fifty Thousand ($250,000) Dollars per annum.

22.     Both of these offers were made as consideration for an agreed upon number of Membership shares of stock in BHI, but Defendant Frank rejected the deal, because, upon information and belief, Defendant Frank did not wish to pay to Plaintiff a monthly commission.

23.     Also in August of 2015, Plaintiff brought in, as an alternative to the GTI offers, a purchase offer by the Farming Investment Group (FIG), represented by Mr. Mike Whitson.

24.     FIG offered a straight Forty Million ($40,000,000) Dollar investment into BHI for 439% of the company.  This was turned down with no explanation given by Defendant Frank.  Upon information and belief, Defendant Frank turned this offer down, because he did not wish to pay to Plaintiff his earned commission.

25.     In the spring of 2016, Plaintiff brought the Duke Energy Company to the table to meet with the Defendants, Duke Energy being one of the largest utility and power companies in the United States.

26.     Duke offered to become a 50% - 50% partner in BHI and was willing to put up investment funds up to the sum of Fifty Million ($50,000,000) Dollars for investment into BHI.

27.     Once again, Defendant Frank turned down their offer and even refused to return their calls, because, upon information and belief, Defendants did not wish to pay the commissions that would be owed to the Plaintiff if they went through with a deal with Duke Energy.

28.     Then on or about the dates of November 9-11 of 2018, Plaintiff brought in an investment group run by a well-known Wall Street investment banker, Andrew Farkus (AF).  AF offered the sum of Forty Million ($40,000,000) Dollars to buy into BHI and Defendants turned it down, supposedly because they believed, mistakenly as it was proved beyond doubt, that AF's brother, who had nothing to do with

the transaction it must be added, was a venture capitalist.  Once again, upon information and belief, Defendants did not wish to pay the commissions that would be owed to the Plaintiff if he went through with a deal with AF.

29.     In February of 2021, Plaintiff brought forward a London based Technology fund, headed by a Mr. Hussain of London (HL).

30.     This group had preliminarily offered an all-cash purchase for 85% of BHI for the offered sum of One Hundred Fifty Million ($150,000,000) Dollars.  The Defendants refused to believe that the Plaintiff had that deal on the table, but told Plaintiff that if he could get them Two Hundred Million ($200,000,000) Dollars for the company, he would take it.

31.      Plaintiff went back to HL and got a firm offer of Two Hundred Million ($200,000,000) Dollars for the 85% of BHI and went back to Defendant Frank with that offer in early April of 2021.

32.     In the meantime, upon information and belief, Defendants were selling BHI, either in part or in whole, which is unknown to the Plaintiff, to a Special Purpose Acquisition Company (SPAC) formed, upon information and belief, by Barclays Bank, PLC (Barclays) and the Wall Street investment firm of Goldman Sachs.

33.     Defendant Frank came back to Plaintiff  and informed him that he would not sell the company to Plaintiff's London group HL, because he had the SPAC deal.

34.     Notwithstanding repeated attempts by Plaintiffs to disclose the SPAC deal to them as shareholders and to perform a side-by-side comparison of the two offers on the table for BHI, Defendants would not do either and the Parties got into a heated argument about it, which resulted in Plaintiff Gentles sending a heated email to Defendant Frank and the breakdown of the Parties' business relationship since.

35.     Once again, and upon information and belief, the Plaintiff firmly believed that the Defendants did not wish to even consider all-cash offer from HL because Defendants did not wish to pay the commissions that would be owed to the Plaintiff if they went through with a deal with HL and, further, other shareholders have confided in Plaintiff that this was indeed the case and will be available to testify

under oath to this fact.

36.    Defendants have to this day refused to disclose the SPAC deal to any of the shareholders of BHI, in direct violation of the Securities Act of 1934 ('34 Act), which governs Defendant BHI, as BHI registered as Regulation "D" Company with the SEC when it was formed, one of numerous violations of SEC regulations and of the '34 Act made by Defendants and as outlined further herein, as well as in the accompanying Order to Show Cause submitted by the Plaintiff upon this Verified Complaint. See Exhibit J. See Exhibits Exhibits H, I & J.

37.    At such time as Plaintiff brought in a bona fide purchaser for Defendant BHI for a purchase and sale transaction which was accepted by and closed upon by the Defendants, Plaintiff was to receive a Partnership level Ten (10%) Per Cent equity position of ownership in the Intellectual Property (IP) Defendant BHI had in the technology and product known as the Dense Energy Ultra-Cell (DEUC). See Exhibits E & K.

38.    Additionally, and at that time, Plaintiff was to receive a Partnership level allocation of Membership Shares in Defendant BHI equal to One Third or Thirty Three and One Third (33.34%) of those outstanding shares as held at that time by Defendant Frank in BHI. See Exhibits E & K.

39.    Plaintiff has been put in the position of having to come to this Court to seek relief as herein requested, due to Defendants willful breach of contract by and between the parties in this action and Defendants' failure to pay to Plaintiff what is rightfully owed to him having been rightfully earned thereto.

40.    Plaintiff has additionally been put into the position of having to come to this Court to seek relief as herein requested, due to the fact that Defendants have committed numerous violations of the '34 Act, as more fully enumerated herein. See Exhibits I & J.

41.    During the entire term of Plaintiff's ownership of BHI Membership shares, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development, the Defendants have never held an Annual Meeting, available to be attended to by Plaintiff or any of the other shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations, and specifically The Securities Act of 1934 ('34 Act"). See Exhibits I & J.

6

42.    During the entire term of Plaintiff's ownership of BHI Membership shares, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development, the Defendants have never appointed a Board of Directors, as available to Plaintiff or any of the other shareholders, to be voted onto or at minimum to be able to vote for Directors to, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations, and specifically The Securities Act of 1934 ('34 Act"). See Exhibits I & J.

43.    During the entire term of Plaintiff's ownership of BHI Membership shares, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development, the Defendants have never held any Shareholder or Member Meetings, available to be attended to by Plaintiff or any of the other shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations, and specifically The Securities Act of 1934 ('34 Act").  See Exhibits I & J.

44.    During the entire term of Plaintiff's ownership of BHI Membership shares, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development, the Defendants have never filed, nor have they ever disclosed to Plaintiff or any of the other shareholders, quarterly and/or annual profit & loss statements, which are, upon information and belief, required to be filed with the SEC and to be disclosed to the shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and, specifically The Securities Act of 1934 ('34 Act").  See Exhibits I & J.

45.    During the entire term of Plaintiff's ownership of BHI Membership shares, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development, the Defendants have not drafted, signed or implemented a formal, overall BHI Shareholders or Membership Agreement, available to be reviewed and signed by Plaintiff or by any of the other the shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act").  See Exhibits I & J.

46.    During the entire term of Plaintiff's ownership of BHI Membership shares, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development,

the Defendants have not drafted, signed or implemented a formal BHI company Operating Agreement, available to be reviewed and signed by the shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act"). <u>See</u> Exhibits I & J.

47.     Plaintiff has been personally informed by Defendant Frank that there is a pending transaction for the sale of BHI, either in part or in whole, through a Special Purpose Acquisition, Company (SPAC) as a vehicle towards maybe taking BHI public, at some undetermined time in the future, as has numerous other shareholders. <u>See</u> Exhibits I & J.

48.     It is stated as "in whole or in part" specifically because the Defendants have never disclosed the details, terms, conditions, pricing and circumstances of this pending sale of BHI to the Plaintiff in this action nor to any of the other shareholders which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act").  <u>See</u> Exhibits I & J.

49.     Further, and after speaking with several attorneys who are familiar with SPAC style transactions, Plaintiff was advised that these deals are frequently a bad deal for small, minority shareholders and that he needed to get more information and full disclosure from the Defendants.

50.     Plaintiff has on numerous occasions requested of Defendant Frank that he disclose the particulars and all documents related to this pending transaction and he has refused to do so.  None of the other shareholders Plaintiff has spoken with have obtained information on this pending transaction either.

51.     That the Defendants have an express, fiduciary duty and responsibility to disclose any potential sale, along with all of its terms and conditions, to all shareholders and that the Defendants' abject refusal to do so, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act").  <u>See</u> Exhibits I & J.

52.     That throughout the term of Plaintiff's shareholder status, in conjunction with Plaintiff's position as Defendant BHI's Vice President of Sales Channel Development, and until just recently,

Plaintiff has not sought to challenge the non-disclosures, because he was working with the Defendants, was a relatively small shareholder and truly believed in the good faith of the Defendants in that they would operate the company to the benefit of all the shareholders, both big and small.

53.     This action has been necessitated on strong part, because the Plaintiff no longer believes that to be the case and now quite strongly believes that the Defendants are not only not acting in the best interest of all the shareholders, but in fact are acting to the express detriment of all the minority shareholders including the Plaintiff in this action, in express violation of their strict fiduciary responsibility to act in the best interests of all shareholders and not solely exclusively in only their own interests.

54.     On the morning of Saturday, August 7, 2021, another minority shareholder by the name of Dany Phillips had a conversation with Defendant Frank. Among other topics discussed, Defendant Frank railed against "all the shareholders" who are working against him and threatened to sell the company cheap and/or to sell the IP of the company, which is the core of the technologies which make up the shareholder value of the outstanding, issued shares, including mine, out from under the company and leave the "scraps" of BHI to the minority shareholders, including Plaintiff in this action.  See Exhibit I.

55.     These threats, along with once again refusing to properly disclose any information about the pending sale of BHI through a SPAC based transaction, has necessitated this action.

56.      Plaintiff has made his Supporting Affidavit under oath and fully understands that everything stated herein is true and accurate to the best of his knowledge.

57.     That it is truly in the best interests of all the shareholders for this Court to grant the relief as requested by Plaintiff in this action.

<u>**FIRST CAUSE OF ACTION**</u>

58.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 57 as if fully set forth herein.

59.     That everything stated in the above paragraphs are true and accurate to the best of Plaintiff's knowledge, except as to those matters stated "upon information and belief" and as to those matters so stated, he believes them to be true.

60.     The Defendants have fraudulently and in breach of contract asserted in prior litigation that the date of June 1, 2015, Membership Stock Certificate issued to Plaintiff for One Hundred Thousand (100,000) Membership shares in Defendant BHI has been revoked and is no longer valid.  See Exhibits L & M.

61.     In Defendants' prior litigation, they submitted phony and fraudulent documents in support thereof, specifically, not one, but two entirely different and phony purported stock certificates falsely claiming the Plaintiff's shares were null and void.  See Exhibits N & O.

62.     Plaintiff's actual Membership Stock Certificate, as actually signed by both Plaintiff and Defendant Frank, has not and cannot be revoked by Defendants.  See Exhibit D.

63.     Plaintiff is entitled to judgment confirming the legitimacy of the June 1, 2015, Membership Stock Certificate issued to Plaintiff for One Hundred Thousand (100,000) Membership shares in Defendant BHI and awards the Certificate and the 100,000 shares issued therein to Plaintiff.

## SECOND CAUSE OF ACTION

64.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 63 as if fully set forth herein.

65.     The Parties in this action expressly agreed that another form of compensation to Plaintiff for the raising of investment funds for and on behalf of the Defendants, a Ten (10%) Per Cent Commission, to be paid by Defendants to Plaintiff as 10% of all investment monies raised by Plaintiff for and on behalf of Defendants thereto.  See Exhibits A, B, E & F.

66.     Most of those commissions owed have not been paid by Defendants to Plaintiff and are due and owing as of the date of this Verified Complaint.

67.     The relatively small dollar amount of commissions which have been paid to date comprise less than Five (5%) Per Cent of the Commission owed by the Defendants to the Plaintiff.

68.     Further, the Defendants never issued a 1099 for any commissions actually paid, despite repeated requests from them from Defendant Gentles, which is not only yet another violation of the '34 Act, but a violation of the Internal Revenue Code and the U.S. Tax Laws.

69.     To date, and as commission-based compensation for his work on behalf of the Defendants, Plaintiff brought in between Two Million ($2,000,000) to Five Million ($5,000,000) Dollars in investment sums to BHI and, therefore has earned between Two Hundred Thousand ($200,000) to Five Hundred Thousand ($500,000) Dollars in commissions.  See Exhibit F.

70.     Despite repeated requests to be paid what is owed, the Defendants have refused to pay out to the Plaintiff the full dollar amount of commissions owed.

71.     Further, and despite repeated requests thereto, the Defendants have refused to provide any accounting of the total dollar amount of investment funds brought into Defendant BHI through the efforts of Plaintiff.

72.     As a result thereof, Plaintiff is entitled to judgment confirming the commission agreement by and between the Parties in this action, to prevent a breach of contract as engaged in by the Defendants and for full compensation from the Defendants for any and all commissions owed by the Defendants for investment into Defendant BHI by investors brought to the Defendants by the Plaintiff, in an amount unknown, but upon information and belief, to be between $200,000 and $500,000.

73.     Further, Plaintiff is entitled to a full forensic accounting from the Defendants for any and all investment sums and/or Membership Shares Purchases made by investors as brought to the Defendants by the Plaintiffs, as well as a full forensic accounting of all commissions owed thereto by the Defendants to the Plaintiffs.

## THIRD CAUSE OF ACTION

74.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 73 as if fully set forth herein.

75.     As above-stated, Plaintiff has introduced numerous large-scale investors and outright company purchasers to the Defendants in accordance with the Defendants' wishes to sell the company to outside investors and/or purchasers.   See Exhibits A & F.

76.     The Defendants turned down every group brought forth by Plaintiff, using a series of bogus excuses or worse, simply not responding at all to bona fide cash offers brought by Plaintiff to the Defendants, including the latest, February of 2021 offer for purchase of the company, as stated above.

77.     The Defendants are now in breach of contract for refusing to sell the company to any one of numerous buyers brought to the Defendants by Plaintiffs in an attempt to avoid paying to Plaintiff his rightfully owed commission on any sale of Defendant BHI thereto.

78.     Plaintiff now seeks redress and compensation owed to Plaintiff by the Defendants, who have breached the Agreement by and between the parties for Plaintiff to bring buyers for Defendant BHI to the table, including the current $200,000,000 offer still available and pending as of the date of the action.

79.     That Defendants owe the sum of $20,000,000 to Plaintiff in commission on this bona fide offer which the Defendants refuse to even review or evaluate.  See Exhibits A & F.

## FOURTH CAUSE OF ACTION

80.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 79 as if fully set forth herein.

81.     As above-stated, at such time as Plaintiff brought in a bona fide purchaser for Defendant BHI for a purchase and sale transaction which was accepted by and closed upon by the Defendants, Plaintiff was to receive a Partnership level Ten (10%) Per Cent equity position of ownership in the Intellectual Property (IP) Defendant BHI had in the technology and product known as the Dense Energy Ultra-Cell (DEUC). See Exhibit K.

82.     Further, and as above-stated, Plaintiff has brought numerous large-scale investors and outright company purchasers to the Defendants in accordance with the Defendants' wishes to sell the company to outside investors and/or purchasers.  See Exhibit G.

83.     Further, and as above-stated, the Defendants turned down every single group brought forth by Plaintiff, using a series of bogus excuses or worse, simply not responding at all to bona fide cash offers brought by Plaintiff to the Defendants, including the latest and still pending February of 2021 offer for purchase of the company as stated above.

84.     Further, and as above-stated, the Defendants are now in breach of contract for refusing to sell the company to any one of numerous buyers brought to the Defendants by Plaintiff in an attempt to avoid paying to Plaintiff his rightfully owed percentage of ownership in the IP known as the DEUC.

85.     Plaintiffs seeks redress and compensation owed to Plaintiff by the Defendants, who have breached the Agreement by and between the parties for Plaintiff to bring buyers for Defendant BHI to the table, including the current $200,000,000 offer still available and pending as of the date of the action.

86.     That, as a result thereof, the Defendants owe to the Plaintiff a Partnership level Ten (10%) Per Cent equity position, as a percentage of ownership in the IP known as the DEUC.  See Exhibits G & K.

## FIFTH CAUSE OF ACTION

87.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 86 as if fully set forth herein.

88.     Additionally, and as above-stated, at such time as a sale of Defendant BHI was formally consummated with a bona fide purchaser, as brought to the Defendants by Plaintiff, Plaintiffs was to receive a Partnership level allocation of Membership Shares in Defendant BHI equal to One Third or Thirty Three and One Third (33.34%) of those outstanding shares as held at that time by Defendant Frank in BHI.  See Exhibit K.

13

89.     Further, and as above-stated, Plaintiff has brought numerous large-scale investors and outright company purchasers to the Defendants in accordance with the Defendants' goal of selling the company to outside investors and/or purchasers.  See Exhibit G.

90.     Further, and as above-stated, the Defendants turned down every single group brought forth by Plaintiff, using a series of bogus excuses or worse, simply not responding at all to bona fide cash offers brought by Plaintiff to the Defendants, including the latest and still pending February of 2021 offer for purchase of the company as stated above.

91.     Further, and as above-stated, the Defendants are now in breach of contract for refusing to sell the company to any one of numerous buyers brought to the Defendants by Plaintiff in an attempt to avoid making an allocation of Membership Shares in Defendant BHI equal to One Third or Thirty Three and One Third (33.34%) of those outstanding shares as held as currently held by Defendant Frank in BHI.

92.     As a result of Defendants' breach of contract, Plaintiff seeks redress and compensation owed to Plaintiff by the Defendants, who have breached the Agreement by and between the Parties for Plaintiff to bring buyers for Defendant BHI to the table, including the current $200,000,000 offer still available and pending as of the date of the action.  See Exhibit F.

93.     That, upon information and belief, Defendant Frank currently owns an allocation of Six Million (6,000,000) Membership Shares in Defendant BHI, as the majority shareholder thereto.  See Exhibits F & K.

94.     That, as a result thereof, the Defendants owe to the Plaintiff a Partnership level allocation of Membership Shares in Defendant BHI equal to One Third or Thirty Three and One Third (33.34%) of those outstanding shares as held as currently held by Defendant Frank in BHI, which, upon information and belief, would be. a total allocation of Two Million (2,000,000) Partnership level Membership Shares in Defendant BHI, to be awarded to Plaintiff in this action.  See Exhibits F & K.

14

## SIXTH CAUSE OF ACTION

95.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 94 as if fully set forth herein.

96.    Plaintiff has additionally been put into the position of having to come to this Court to seek relief as herein requested, due to the fact that Defendants have committed numerous violations of the '34 Act, as fully stated above.

97.    The Defendants have never held an Annual Meeting, available to be attended to by Plaintiff or any of the other shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations, and specifically The Securities Act of 1934 ('34 Act"). See Exhibits I & J.

98.    The Defendants have never appointed a Board of Directors, as available to Plaintiff or any of the other shareholders, to be voted onto or at minimum to be able to vote for Directors to, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations, and specifically The Securities Act of 1934 ('34 Act"). See Exhibits I & J.

99.    The Defendants have never held any Shareholder or Member Meetings, available to be attended to by Plaintiff or any of the other shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations, and specifically The Securities Act of 1934 ('34 Act"). See Exhibits I & J.

100.    The Defendants have never filed, nor have they ever disclosed to Plaintiff or any of the other shareholders, quarterly and/or annual profit & loss statements, which are, upon information and belief, required to be filed with the SEC and to be disclosed to the shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and, specifically The Securities Act of 1934 ('34 Act"). See Exhibits I & J.

101.    The Defendants have not drafted, signed or implemented a formal, overall BHI Shareholders or Membership Agreement, available to be reviewed and signed by Plaintiff or by any of the other the shareholders, which, upon information and belief, would be a violation of Securities &

Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act"). <u>See</u> Exhibits I & J.

102.    During the entire term of my ownership of BHI shares, in conjunction with my position as Defendant BHI's Vice President of Sales Channel Development, the Defendants have not drafted, signed or implemented a formal BHI company Operating Agreement, available to be reviewed and signed by the shareholders, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act"). <u>See</u> Exhibits I & J.

103.    Plaintiff has been informed by Defendant Frank that there is a pending transaction for the sale of BHI, either in part or in whole, through some sort of Special Purpose Acquisition Company (SPAC) as a vehicle towards maybe taking BHI public, at some undetermined time in the future. <u>See</u> Exhibits I & J.

104.    The Defendants have never disclosed the details, terms, conditions, pricing and circumstances of this pending sale of BHI to Plaintiff in this action nor to any of the other shareholders which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act").

105.    The Defendants have not disclosed to any of the other shareholders in the latest BHI Quarterly Report, that the Defendants are involved in two lawsuits that the Defendants brought against Plaintiff in both the Florida Federal District Court, as well as a Florida state court, which, upon information and belief, would be a violation of Securities & Exchange Commission (SEC) Rules and Regulations and specifically The Securities Act of 1934 ('34 Act").<u>See</u> Exhibits I & J.

106.    Plaintiff is entitled to compensation, as a result, of the numerous violations of the '34 Act by the Defendants, who have breached their fiduciary responsibility to the Plaintiff to act in accordance with '34 Act Rules and Regulations.

107.    That, as a result thereof, the Plaintiff has suffered severe emotional distress and severe and adverse effects on the health of Plaintiff, who now seeks compensatory damages in the sum of Ten Million ($10,000,000) Dollars from Defendants thereto.

108.    That, as a result thereof, and due to the fact that Plaintiff has suffered severe emotional distress and severe and adverse effects on the health of Plaintiff, who now seeks punitive damages in the sum of Ten Million ($10,000,000) Dollars from Defendants thereto.

## SEVENTH CAUSE OF ACTION

109.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 108 as if fully set forth herein.

110.    Plaintiff has brought forward a London based Technology fund, headed by a Mr. Hussain of London (HL), as above-stated.

111.    This group has a current and pending all-cash offer on the table for the purchase of 85% of the outstanding Membership Shares of Defendant BHI for the offered sum of Two Hundred Million ($200,000,000), which Defendant Frank agreed he would accept.

112.     In the meantime, upon information and belief, Defendants were selling BHI, either in part or in whole, which is unknown to the Plaintiff, to a Special Purpose Acquisition Company (SPAC) formed, upon information and belief, by Barclays Bank, PLC (Barclays) and the Wall Street investment firm of Goldman Sachs.

113.    Defendant Frank came back to Plaintiff and informed him that he would not sell the company to Plaintiff's London group HL, because he had the SPAC deal.

114.    Notwithstanding repeated attempts by Plaintiff to disclose the SPAC deal to them as shareholders and to perform a side-by-side comparison of the two offers on the table for BHI, Defendants have refused to do so or even consider the Hussain Group offer.

115.    Plaintiff is entitled to a judgment ordering the Defendants to perform a side-by-side comparison of the two transactions, to further disclose all the details and all of the pending documents in Defendants' secret and undisclosed SPAC deal to all shareholders, including Plaintiff and to Order the sale of Defendant BHI to that Purchaser who comes in with the better all-cash offer for all shareholders.

## EIGHTH CAUSE OF ACTION

116.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 115 as if fully set forth herein.

117.    As above-stated, on the morning of Saturday, August 7, 2021, Defendant Frank expressly and specifically threatened to sell Defendant BHI cheap and/or to sell the IP of the company, known as the DEUC, out from under the company and leave the "scraps" of BHI to the minority shareholders, including the Plaintiff in this action.  See Exhibit I.

118.    These threats, along with the Defendants' consistent refusal to properly disclose any information about the pending sale of BHI through a SPAC based transaction, has necessitated this action.

119.    Further, these expressly stated threats have caused Plaintiff to file the attached Orders to Show Cause in this action, which seek immediate relief and restrain the Defendants from moving forward with their undisclosed SPAC deal without full disclosure to and full approval of the minority shareholders; and by express Order of this Court; of selling Defendant BHI cheap in order to punish the minority shareholders and without full disclosure to and full approval of the minority shareholders; and by express Order of this Court; of selling the IP of the Defendants and specifically of the DEUC without full disclosure to and full approval of the minority shareholders and by express Order of this Court and which appoint a Court appointed Receiver to take over day-to-day management of Defendant BHI under direct Court supervision thereto.

**WHEREFORE,** Plaintiff hereby request that this Court enter judgment as follows:

A.      As per Plaintiff's First Cause of Action, for an Order which confirms the legitimacy of and awards to Plaintiff Gentles the June 1, 2015, Membership Stock Certificate, issued to Plaintiff for One Hundred Thousand (100,000) Membership shares in Defendant BHI by Defendants; and

B.      As for Plaintiff's Second Cause of Action, for an Order which directs the Defendants to have performed and to provide to the Court a forensic accounting of all investment sums, subscription

18

agreements and appurtenant paperwork for all investment into and purchase of membership shares of Defendant BHI and which then directs payment of Plaintiff's  commission-based compensation in the sum of between Two Hundred Thousand ($200,000) to Five Hundred Thousand ($500,000) Dollars in commissions thereto; and

C.      As for Plaintiff's Third Cause of Action, for an Order which directs payment of commissions owed to the Plaintiff due to breach of contract for the sale of the company by the Defendants, in the sum of Twenty Million ($20,000,000) Dollars; and

D.      As for Plaintiff's Fourth Cause of Action, for an Order which directs the Defendants to allocate a Ten (10%) Per Cent equity position of a Partnership level ownership in the Intellectual Property (IP) of Defendant BHI, in the technology and product known as the Dense Energy Ultra-Cell (DEUC) due to breach of contract for the sale of the company by the Defendants to Plaintiff's bona fide purchaser: and

E.      As for Plaintiff's Fifth Cause of Action, for an Order which directs the Defendants to allocate a Partnership level Two Million (2,000,000) Membership Shares in Defendant BHI, to be awarded to the Plaintiffs in this action due to breach of contract for the sale of the company by the Defendants to Plaintiff's bona fide purchaser: and

F.      As for Plaintiff's Sixth Cause of Action, for an Order which directs the Defendants to pay to Plaintiff the sum of Ten Million ($10,000,000) Dollars as compensatory damages and the sum of Ten ($10,000,000) Million Dollars in punitive damages, for a total judgment for this Cause of Action of Twenty Million ($20,000,000) Dollars for the emotional distress and severe effect on Plaintiff as a result Defendants' actions and numerous violations of the '34 Act and Defendant's fiduciary duties to Plaintiff  thereto; and

G.      As for Plaintiff's Seventh Cause of Action, for an Order which directs the Defendants to perform a side-by-side comparison of the two transactions under the direction of this Court; which directs the Defendants to disclose all the details and all of the pending documents in Defendants' secret and undisclosed SPAC deal to all the shareholders in Defendant BHI; and which Orders the sale of Defendant BHI to that Purchaser who comes in with the better all-cash offer for all shareholders;

H.      As for Plaintiff's Eighth Cause of Action, for an Order which restrains the Defendants from moving forward with their undisclosed SPAC deal without full disclosure to and full approval of

the minority shareholders and of this Court;  which restrains the Defendants from any sale of Defendant BHI at any price without full disclosure to and full approval of the minority shareholders and of this Court;  which restrains the Defendants from the sale any of the IP of the Defendants and specifically, but no exclusively of, the DEUC without full disclosure to and full approval of the minority shareholders and of this Court;  and which hereby appoints a Court appointed Receiver to take over day-to-day management of Defendant BHI under direct Court supervision thereto; and

I.      Which shall duly enter a Judgment against Defendants, jointly and/or severally with the other Defendants in this action and in favor of Plaintiff for each Cause of Action as stated above and as allowed by law; and

J.      Which shall award to Plaintiff attorneys fees and all costs and fees of this action; and

K.      For such other and further relief as the Court deems just, fair and equitable, to which Plaintiff may be entitled.

ARLEO & DONOHUE, LLC
Attorney for Plaintiff
By:   */s/ Frank P. Arleo*
                Frank P. Arleo

Dated:  September 1, 2021

## DEMAND FOR JURY TRIAL

Under Fed.R.Civ.P.38(b), plaintiff demands a jury trial of all issues.

## CERTIFICATION

Pursuant to Local Rule 11.2, I certify that to the best of my knowledge, information and belief that the matter in controversy is not the subject of any other Court action or arbitration proceeding, nor pending or contemplated with the exception of a matter entitled Blue Horizons, LLC et al v. NextGen Financial, LLC, et al., Case No. CACE-21-013959, Division 09, Circuit Court of the Eleventh Circuit, Broward County, Florida (presently the subject matter of a motion to dismiss for lack of subject matter jurisdiction) and a matter entitled, Blue Horizons Innovations, LLC, et al. v. NextGen Financial LLC, et al., Civil Action No. 21-CV-61352-WPD (S.D. Fla.) (dismissed for lack of jurisdiction) and that no other parties should be joined in this action.

ARLEO & DONOHUE, LLC

Attorney for Plaintiff
By:   */s/ Frank P. Arleo*

20

## VERIFICATION OF COMPLAINT

**R. DANIEL GENTILES**, of full age, being duly sworn according to law, deposes and says:

1. I am the plaintiff in this matter and fully competent to make this Affidavit/Verification in support of my Verified Complaint in this action.

2. That I hereby Declare Under Penalty of Perjury and Verify that I have personal, firsthand knowledge of the facts stated in this Verified Complaint and that to the best of my knowledge, all of the facts as stated in this Verified Complaint, are true and correct.

3. That I hereby Declare Under Penalty of Perjury and Verify that as to those facts as stated upon information and belief, I believe them to be true and correct.

5. That I hereby Declare Under Penalty of Perjury and Verify that if called to testify as a witness in this matter, I could and would competently testify to each of the facts as set forth therein.

R. DANIEL GENTLES

Dated:  August 31, 2021

Sworn to before me this
31st Day of August, 2021

NOTARY PUBLIC

DANIEL A SANTOS
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 50072463
MY COMMISSION EXPIRES NOV. 27, 2022

21